# BakerHostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

February 10, 2023

Mark W. DeLaquil
direct dial: 202.861.1527
mdelaquil@bakerlaw.com

**VIA ECF**

Patricia S. Dodszuweit, Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

*Re:*   Notice of Supplemental Authority in Case No. 21-3218

Dear Ms. Dodszuweit:

On behalf of Petitioner United Refining Company, I am writing concerning the United States Court of Appeals for the Fifth Circuit's recent order in *Calumet Shreveport Refining LLC v. EPA*, No. 22-60266 (5th Cir. Jan. 27, 2023) (Ex. A).

At oral argument, the Court inquired about the impact of EPA's retroactive reinterpretation of the small refinery hardship relief process, which would eliminate consideration of the DOE scoring matrix, on a remand proceeding. In *Calumet Refining*, the Fifth Circuit considered this question in the context of a motion to stay that raised the lawfulness of EPA's retroactive reinterpretation to multiple hardship relief petitions for the 2018-2021 compliance years. The Fifth Circuit found that the small refineries were likely to prevail on their argument that EPA's new interpretation "led to an unlawful retroactive application of a new standard." Ex. A, at 6. In the Fifth Circuit's view, EPA's decision to "jettison[] the scoring matrix and economic considerations used for the prior decade in favor of an admittedly 'new interpretation of the CAA provisions'" was likely unlawful because it "disregarded the refiners' reliance interests, failed to give fair notice, and acted retroactively." Ex. A, at 7–8. Although not ruling

Patricia S. Dodszuweit, Clerk of Court
February 10, 2023
Page 2

on this basis, the Fifth Circuit further observed that EPA's attempted "retroactive application" would "quite possibly read the exemption framework promulgated by Congress out of the statute entirely, such that no small refinery will every qualify for one." Ex. A, at 8. Ultimately, the Fifth Circuit correctly concluded that small refineries "are entitled to know the ground rules by which EPA will grant or deny their hardship petitions, in advance of making their application." Ex. A, at 10–11.

*Calumet Refining* demonstrates that vacatur of EPA's decision denying United Refining hardship relief petition would not be a futile or meaningless remedy. Instead, EPA would be obligated on remand to fairly apply its interpretation of the Clean Air Act as it existed at the time of United Refining's petition.

Sincerely,

*/s/ Mark W. DeLaquil*
Mark W. DeLaquil

*Attorney for Petitioner United Refining Co.*

## **CERTIFICATE OF COMPLIANCE**

I certify that the body of the foregoing letter contains 325 words and is thus in compliance with the 350-word count limit in Fed. R. App. P. 28(j).

Dated: February 10, 2023

*/s/ Mark W. DeLaquil*
MARK W. DELAQUIL

## **Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: February 10, 2023

*/s/ Mark W. DeLaquil*
MARK W. DELAQUIL

# Exhibit A

# United States Court of Appeals
# for the Fifth Circuit

───────────

No. 22-60266

───────────

Calumet Shreveport Refining, L.L.C.; Placid Refining Company, L.L.C., Ergon Refining, Incorporated; Wynnewood Refining Company, L.L.C.,

*Petitioners,*

*versus*

United States Environmental Protection Agency,

*Respondent,*

consolidated with

───────────

No. 22-60425

───────────

Wynnewood Refining Company, L.L.C.; Calumet Shreveport Refining, L.L.C.; San Antonio Refinery, L.L.C.,

*Petitioners,*

*versus*

United States Environmental Protection Agency,

*Respondent,*

No. 22-60266

c/w Nos. 22-60425, 22-60433, 22-60434

consolidated with

———————

No. 22-60433

———————

Ergon Refining, Incorporated; Ergon-West Virginia, Incorporated,

*Petitioners*,

*versus*

United States Environmental Protection Agency,

*Respondent*,

consolidated with

———————

No. 22-60434

———————

Placid Refining Company, L.L.C.,

*Petitioner*,

*versus*

United States Environmental Protection Agency,

*Respondent*.

---

Petition for Review from an Order of the
Environmental Protection Admin
Agency No. 87 Fed. Reg. 24300
Agency No. EPA-420-R-22-011
Agency No. 87 Fed. Reg. 34873
Agency No. 87 Fed. Reg. 34873
Agency No. 87 Fed. Reg. 34873

---

UNPUBLISHED ORDER

Before HIGGINBOTHAM, DUNCAN, and WILSON, *Circuit Judges*.

PER CURIAM:

Two small refiners, the San Antonio Refinery, L.L.C. ("TSAR") and Calumet Shreveport Refining, L.L.C. ("Calumet"), seek a stay of certain compliance obligations under the Clean Air Act ("CAA") pending appeal. In the underlying appeals, TSAR, Calumet, and other refiners challenge the Environmental Protection Agency's ("EPA") decision to deny their requested hardship exemptions from the CAA's Renewable Fuel Standard ("RFS") obligations.[1] We grant their motions.

## I.

"In 2005, Congress amended the [CAA] to encourage increased use of renewable fuels in the United States." *Hermes Consol., LLC v. EPA*, 787 F.3d 568, 572 (D.C. Cir. 2015); *see also* 42 U.S.C. § 7545(*o*). "The statute vests EPA with authority to develop a renewable fuels program to secure satisfaction of . . . annual benchmarks." *Id*. (citing 42 U.S.C.

---

[1] TSAR appeals the denial of its exemption petitions for the 2018-2021 compliance years. Calumet appeals the denial of its petitions for the 2018-2020 compliance years.

§ 7545(*o*)(2)(A)(i)). EPA sets the renewable fuel standards for each refinery, and refineries comply using a system of credits—with the credits representing certain quantities of renewable fuel. 42 U.S.C. §§ 7545(*o*)(2)(B)(ii), (*o*)(3)(B), (*o*)(5)(A)(i). "Any given refinery may [] comply with the law thanks to its own blending efforts, the purchase of credits from someone else, or a combination of both." *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuel Ass'n*, 141 S. Ct. 2172, 2175 (2021).

Small refiners were initially granted a blanket exemption from RFS obligations through 2011. 42 U.S.C. § 7545(*o*)(9)(A)(i). Thereafter, small refiners could petition for an extension of the exemption based on "disproportionate economic hardship" that would arise because of compliance with the benchmarks. *Id.* § 7545(*o*)(9)(B)(i). Under the methodology that had been consistently used since the blanket waiver lapsed in 2011, EPA evaluated hardship petitions using a scoring matrix that took "other economic factors" faced by small refiners into account, as provided by § 7545(*o*)(9)(A)–(B). That matrix was based on a study prepared by the Secretary of Energy in accordance with the CAA. *See id.* § 7545(*o*)(9)(A)(ii). The CAA requires EPA "in consultation with the Secretary of Energy" to "consider the findings of the study" in evaluating hardship petitions. *Id.* § 7545(*o*)(9)(B)(ii). The statutory framework requires EPA to act on hardship petitions within 90 days of receipt. *Id.* § 7545(*o*)(9)(B)(iii).

At issue in these appeals is EPA's late 2021 decision to change its methodology for determining "disproportionate economic hardship," leading to the denial of refiners' pending petitions for hardship exemptions dating back to 2016. In its "new interpretation of the CAA provisions regarding disproportionate economic hardship for exemption petitions and economic analysis," EPA scrapped the scoring matrix, even as applied to pending hardship petitions, and sought comment on its new approach for determining disproportionate economic impact. *See* Proposed RFS Small

Refinery Exemption Decision, EPA-420-D-21-001; *see also* Notice of Opportunity To Comment on Proposed Denial of Petitions for Small Refinery Exemptions, 86 Fed. Reg. 70999-01 (Dec. 14, 2021). EPA then denied 36 hardship exemption petitions for the 2018 compliance year employing its "new interpretation" of the CAA. *See* April 2022 Denial of Petitions for RFS Small Refinery Exemptions, EPA-420-R-22-005; *see also* April 2022 Denial of Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program, 87 Fed. Reg. 24300-01 (Apr. 25, 2022). In June 2022, EPA issued the final decision giving rise to these appeals, denying 69 petitions from small refiners seeking hardship exemptions for the 2016–2021 compliance years. *See* June 2022 Denial of Petitions for RFS Small Refinery Exemptions, EPA-420-R-22-011; *see also* Notice of June 2022 Denial of Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program, 87 Fed. Reg. 34873-01 (June 8, 2022).

TSAR and Calumet qualify as small refiners, and they historically have received hardship exemptions from RFS obligations. Several of TSAR and Calumet's hardship petitions were denied by EPA's June 2022 decision. Now seeking a stay of their RFS compliance obligations pending their appeals of the EPA's decision, TSAR and Calumet assert they will suffer severe financial consequences if forced to comply pending appeal. Opposing the requested relief, EPA contends that TSAR and Calumet gambled on receiving a discretionary exemption instead of planning to meet their RFS compliance obligations, such that a stay is unwarranted.

## II.

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). We examine a motion for a stay pending appeal under the

*Nken* factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." 556 U.S. at 426 (citation omitted). The third and fourth factors merge when the government is the opposing party. *Id.* at 435. "The first two factors, the likelihood of success on the merits and a showing of irreparable injury absent a stay, 'are the most critical.'" *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (quoting *Nken*, 556 U.S. at 434).

### A.    *Substantial Likelihood of Success on the Merits*

We first consider TSAR's and Calumet's likelihood of success on the merits.[2] The refiners put forth three arguments: (1) EPA's new statutory interpretation violates the CAA; (2) EPA's new interpretation of "disproportionate economic hardship" led to an unlawful retroactive application of a new standard; and (3) EPA's denial of the hardship exemption petitions was arbitrary and capricious. We are persuaded that TSAR and Calumet are likely to prevail on at least the second argument, so we focus our analysis there.[3]

---

[2] Of course, this panel's "determination of [the refiners]' likelihood of success on the merits is for the purposes of the stay only and does not bind the merits panel." *Texas v. United States Env't Prot. Agency*, 829 F.3d 405, 425 n.29 (5th Cir. 2016) (citations omitted).

[3] The parties spar sharply over whether EPA's new "economic theory" comports with either the CAA or sound economics. These competing contentions largely relate to TSAR's and Calumet's first and third arguments in support of a stay. EPA contends "that RFS compliance costs are passed through to consumers in the price of transportation fuel, and therefore none of the [small refiners'] petitions demonstrated disproportionate economic hardship caused by compliance with the RFS program in the applicable years." TSAR and Calumet take issue with the assumptions on which this "new interpretation" of the CAA is based. We need not resolve these factually intensive issues at this juncture.

EPA contends that its decision to change the hardship exemption framework was not applied retroactively because it was applied to petitions that were still pending at the time of the new framework's implementation.[4] When considering if an administrative rule operates retroactively, we must consider "fair notice, reasonable reliance, and settled expectations." *Treasure State Res. Indus. Ass'n v. E.P.A.*, 805 F.3d 300, 305 (D.C. Cir. 2015) (quoting *Landgraf v. U.S.I. Film Products*, 511 U.S. 244, 270 (1994)). "If a new rule is 'substantively inconsistent' with a prior agency practice and attaches new legal consequences to events completed before its enactment, it operates retroactively." *Arkema, Inc. v. EPA*, 618 F.3d 1, 7 (D.C. Cir. 2010) (quoting *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 860 (D.C. Cir. 2002)). We are persuaded that is the case here.

In announcing its new methodology for evaluating whether petitioning refineries faced "disproportionate economic hardship" in complying with their RFS obligations, EPA jettisoned the scoring matrix and economic considerations used for the prior decade in favor of an admittedly "new interpretation of the CAA provisions regarding disproportionate economic hardship for exemption petitions and economic analysis." Though TSAR and Calumet had been repeatedly granted hardship exemptions in prior years, they found their pending petitions denied under the EPA's "new interpretation" of the statute. While they certainly are not entitled to exemptions *ad infinitum*, TSAR and Calumet were entitled to have their pending petitions evaluated under consistent ground rules, i.e., in view of "fair notice, reasonable reliance, and settled expectations." *Treasure State Res. Indus. Ass'n*, 805 F.3d at 305. When an agency changes course, as EPA did here with its "new interpretation" of the CAA, "it must be cognizant

---

[4] Of course, in many cases, the hardship petitions remained pending only because EPA took years to issue a decision, contrary to its express obligation under the CAA to act on such petitions within 90 days of receipt. *See* 42 U.S.C. § 7545(*o*)(9)(B)(iii).

7

that longstanding policies may have engendered serious reliance interests that must be taken into account." *Wages & White Lion Invs., LLC v. United States Food & Drug Admin.*, 16 F.4th 1130, 1139 (5th Cir. 2021) (granting stay pending appeal) (quoting *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020)).

Based on the record before us, in denying the refiners' pending hardship petitions—in many cases for compliance periods now long elapsed—based on its "new interpretation" of the CAA's standard for such exemptions, the EPA disregarded the refiners' reliance interests, failed to give fair notice, and acted retroactively. That retroactive application of EPA's "new interpretation"—which quite possibly will read the exemption framework promulgated by Congress out of the statute entirely, such that no small refinery will ever qualify for one—is thus likely contrary to law. It follows that TSAR and Calumet, at least as to their hardship petitions submitted for years prior to EPA's late-2021 change of course, have demonstrated a likelihood of success on the merits.

B.   *Irreparable Injury Absent a Stay*

The second factor—irreparable injury absent a stay—favors TSAR and Calumet. TSAR represents that, absent a stay, it will be forced to file for bankruptcy in a few months. Calumet asserts it will face insolvency in a matter of weeks. EPA responds that the alleged harm is "artificially inflate[d]" and that TSAR and Calumet would not be in this perilous financial position if they had appropriately managed their compliance obligations under the CAA.

Imminent financial ruin is sufficient to satisfy the second factor. *See Wages & White Lion Invs.*, 16 F.4th at 1142–43 (irreparable injury was demonstrated when movant planned to lay off employees and company's "very existence" was threatened); *see also Texas v. United States Env't Prot.*

*Agency*, 829 F.3d 405, 434 (5th Cir. 2016) (threatened harms such as unemployment and permanent closure are irreparable). While the parties may dispute why TSAR and Calumet are in financial distress, EPA fails meaningfully to dispute that they are, in fact, facing irreparable economic harm absent a stay.

### C. *Injury to Nonmoving Party and the Public Interest*

As to the third and fourth factors, we must consider whether the public interest favors or disfavors a stay. TSAR and Calumet assert that they are important employers in their communities and the public has an interest in maintaining small refineries. They also submit that a stay at this point is not harmful because it cannot influence the amount of renewable fuel that is introduced into the market going forward, considering that the compliance years in dispute have already passed.

EPA takes the opposite position, that a stay would harm the public interest. In EPA's view, granting a stay would artificially inflate the credits available on the open market that are used to satisfy RFS obligations, undercutting the goals of the renewable fuel program and leading to less demand for renewable fuel. And, EPA posits that TSAR and Calumet should not be rewarded for non-compliance with their RFS obligations.

These factors are close to neutral. We find TSAR's and Calumet's arguments on where the public interest lies more persuasive, if only marginally. Much of the EPA's argument collapses into the agency's merits arguments and is only persuasive if the EPA succeeds on the merits. As noted above, to the extent the refiners are likely to succeed on the merits, the public interest would cut the same way.

## III.

EPA contends that this court is without authority to grant TSAR's and Calumet's requested stay of their compliance obligations pending appeal. Without hardship relief, refiners are required to comply with the RFS obligations provided by the CAA. Logically, then, EPA asserts that this court may not excuse the refiners from complying with the statute, which is otherwise in force absent hardship exemptions. In other words, EPA contends that a stay here would improperly *alter* the "status quo" and excuse the refiners from complying with the CAA. But the EPA misapprehends the "status quo" that is preserved by a stay.

"[T]he relief sought here would simply suspend the *administrative* alteration of the status quo[.]" *Nken*, 556 U.S. at 429 n.1. Basically, the EPA was not free to deny TSAR's and Calumet's hardship exemption petitions by retroactively applying a "reinterpreted" (i.e., newly-announced) methodology for evaluating "disproportionate economic hardship" under 42 U.S.C. § 7545(*o*)(9)(B). A stay merely prevents the EPA from applying its new standard to deny the refiners' requested exemptions until the court can determine, on the merits, whether the new standard can legally be applied. This court has stayed similar agency action before and maintains the authority to do so here. *See* 5 U.S.C. § 705 (providing that courts have authority to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings"); *see also Wages & White Lion Invs.*, 16 F.4th at 1143–44.

\*   \*   \*

Nothing here is to suggest that TSAR and Calumet are entitled to continuing hardship waivers. But they are entitled to know the ground rules by which EPA will grant or deny their hardship petitions, in advance of

making their applications. Here, EPA changed the rules retroactively, and TSAR and Calumet have made a strong showing that they will succeed on the merits of their appeals as a result.

IT IS ORDERED that the motions of the San Antonio Refinery, L.L.C. and Calumet Shreveport Refining, L.L.C. for a stay pending appeal are GRANTED.